**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM HUDSON**, | : | Case No. 1:12CV0784 |
| Petitioner, | : | |
| vs. | : | |
| **TERRY TIBBALS, WARDEN**, | : | **MAGISTRATE'S REPORT & RECOMMENDATION** |
| Respondent. | : | |

**I. INTRODUCTION.**

Pursuant to UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES 72.2(b)(2), this case was automatically referred to the undersigned Magistrate Judge for Report and Recommendation. Pending are:

(1) Petitioner's Petition for Writ of Habeas Corpus, Respondent's Return of Writ and Supplement, Petitioner's Traverse and Respondent's Reply to Petitioner's Traverse (Docket Nos. 1, 4, 9, 12 & 13); and

(2) Petitioner's Motion to Order State to Provide Complete Transcript and Respondent's Response to Motion to Order State to Provide Complete transcript (Docket Nos. 6 & 8).

For the reasons that follow, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus and deny the Motion to Order State to Provide Complete Transcript.

## II. FACTUAL BACKGROUND

Because Petitioner filed his habeas petition after the enactment of the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA), codified at 28 U.S.C. § 2254(d) on April 24, 1996, the Court applies the AEDPA standard of review.  *Cooey v. Coyle*, 289 F. 3d 882, 896 (6th Cir. 2002) *cert. denied,* 123 S. Ct. 1620 (2003).  Under AEDPA, the state court's findings of fact are presumed to be correct unless they are rebutted by clear and convincing evidence.  *Montes v. Trombley*, 599 F.3d 490, 494 (6th Cir.2010) (*citing Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir.2007).

Here, Petitioner has not presented any evidence to rebut the findings of facts made by the court of appeals.  The pertinent facts adduced at trial are as follows:

> On February 23, 2006, Genaro Claudio and Petitioner, known to Claudio as "Billie," attended a family-reunion type of party.  Claudio testified that he left the party between 2:00 a.m. and 2:45 a.m., and that Petitioner asked him for a ride.  Claudio stated that he agreed and drove Petitioner to the area of W. 32nd Street and Bradwell Avenue, where Petitioner told him to stop.  Claudio testified that Petitioner then pointed a revolver to Claudio's head and told him, "I'm going to kill you because you hit me with a bottle."  Genaro Claudio claims that Petitioner shot him six times.
>
> Claudio stated that Petitioner mistakenly believed that he had hit him on the head with a beer bottle a couple months earlier; however, he claims it was actually his cousin who had hit Petitioner with the bottle.  He also testified that he was told by his aunt of rumors that Petitioner was going to kill him.  Despite this, Claudio agreed to give Petitioner a ride that night.  Claudio indicated that Petitioner was dressed mostly in black and had on a black baseball hat.
>
> Claudio testified that as he observed Petitioner pulling the trigger back, he grabbed him by the wrist and was shot in the stomach.  A struggle ensued during which the two exited the vehicle, and Claudio was shot several more times.  Ultimately, Claudio was able to run away, while being shot from behind.  He continued to hop away, jump a fence, and hide under the porch of a house.  Claudio testified that Petitioner passed by, still threatening to kill him, and then went away.  Claudio went door to door until someone called the police for him.  He was taken to the hospital.

Officer Simon was the reporting officer on the case and prepared the initial police report. Officer Simon responded at 3:20 a.m. to an area where the shots had been heard. He observed a silver car parked on the side of the road, with its lights on, engine running, and driver's door open. He noted a bullet nick in the steering wheel and a bullet hole in the driver's door, and he found a spent bullet fragment. Officer Simon met with Claudio at the hospital, and Claudio told him that he did not want any police involvement and that he would handle the matter on his own. Upon further questioning, Claudio told Officer Simon that "Billie" had shot him and provided a description.

Officer Raymond O'Connor responded to the area of the shooting to look for the suspect, whose description had been broadcast. He observed an individual on foot who roughly matched the description, and pursued him. The suspect went over a fence, and the officer lost sight of him. Prior to going over the fence, the suspect dropped a hat that was recovered and was found to have a bullet hole in it. A five-shot revolver was also recovered in the area; later testing determined it was not the firearm used to shoot Claudio.

William Holloway testified that he resides on Bradwell Avenue and heard gunshots on the night of the incident. He observed a car parked in the street with the door open and nobody inside. He also saw a "guy wearing a black leather jacket, shaved head" who was looking around at the ground "like he had dropped something." He then saw the man moving away at a "hurried pace." He testified that he thought the man was Caucasian and was shorter than Holloway. Testimony at trial revealed that Hudson was the same height as Holloway. However, Holloway stated he could not provide a good description and did not get a good look at the person's face. Holloway stated he was about "75 feet away from the guy standing in between the houses." Holloway spoke to the police when they arrived.

Petitioner was arrested several weeks later at the home of Joseph Wente. When the police arrived at Wente's home, Wente denied that Petitioner was there. The police looked around the house and found Petitioner under a couch. Wente was arrested and charged with obstruction of justice.

Joseph Wente and Petitioner were taken to jail together and placed in neighboring cells. Wente indicated that Petitioner told him what had happened, including that the victim had hit him with a bottle, that the two were fighting again, that Petitioner shot the victim several times, and that Petitioner dropped a hat that might have had a gunshot hole in it. Within two or three days of learning of the events from Petitioner spoke to a detective. Wente stated that he decided to testify because he learned that "there was a defense being built that was going to try to put it on me, that I shot a guy I've never met before." He claimed to have learned this only a couple months prior to trial.

3

Garrett Satterfield was a pod mate with Petitioner in September 2006. He claimed that Petitioner informed him that Claudio had hit him over the head with a bottle, that Petitioner and Claudio were at a family gathering together and Petitioner asked Claudio for a ride, and that he shot Claudio. Satterfield testified to further details that Petitioner purportedly told him. He indicated that Petitioner had obtained a copy of the police report and had told Satterfield that "stuff was messed up and he thought he could beat the case." Satterfield made a statement to Detective David Borden in September. Satterfield admitted that he was facing burglary charges when he testified in this case.

Detective David Borden testified that he was assigned to investigate the case. He interviewed Sherry Coon and Antonio Gonzalez, both of whom had attended the party on the night of the shooting. He found neither of them cooperative. He testified that he learned general time frames regarding their attendance at the party, but that they could not "lock anything down." Detective Borden obtained various leads on Petitioner. He testified to the details of Petitioner's arrest. In relation to the five-shot revolver that had been recovered, Detective Borden was asked whether he was familiar with a "drop gun." The detective testified that it is "another gun that somebody carries on them and drops at the scene of a crime or wherever."

*State v. Hudson*, 2008 WL 740532, *1 -3 (2008).

### III. PROCEDURAL BACKGROUND.

A.     THE INDICTMENT.

During the January term of 2006, the jurors of the Grand Jury of Cuyahoga County, Ohio returned a seven-count indictment against Petitioner for violations arising from the February 23, 2006 encounter with Genaro Claudio.

| COUNTS | CHARGES |
|---|---|
| 1. | ATTEMPTED MURDER, a violation of OHIO REV. CODE § 2923.02/2903.02; |
| 2. | ATTEMPTED MURDER, a violation of OHIO REV. CODE § 2923.02/2903.02; |
| 3. | FELONIOUS ASSAULT, a violation of OHIO REV. CODE § 2903.11; |
| 4. | FELONIOUS ASSAULT, a violation of OHIO REV. CODE § 2903.11; |
| 5. | AGGRAVATED ROBBERY, a violation of OHIO REV. CODE § 2911.01; |
| 6. | AGGRAVATED ROBBERY, a violation of OHIO REV. CODE § 2911.01; and |
| 7. | HAVING A WEAPON WHILE UNDER DISABILITY, a violation of OHIO REV. CODE § 2923.13. |

As to all seven counts, the grand jury specified that Petitioner had a prior conviction of aggravated burglary and/or attempted burglary; that Petitioner was a repeat violent offender, having been convicted of a crime of aggravated burglary and/or attempted aggravated burglary; that at the time he committed these offenses, Petitioner had a firearm on or about his person or under his control and that while committing the offenses, a crime punishable by a term in state prison of one year; and that Petitioner displayed or brandished the firearm and used it to facilitate the offense, a crime punishable by a term in state prison of three years (Docket No. 4-2, pp. 6-11 of 482).

**B.    THE VERDICT.**

On February 20, 2007, the jury returned the following verdicts:

| COUNTS | DISPOSITION |
|---|---|
| 1 & 2. | GUILTY of attempted murder and the one year and three-year firearm specifications; and GUILTY of the repeat violent offender specification and GUILTY of the notice of prior conviction specification. |
| 3 & 4 | GUILTY of felonious assault and the one year and three-year firearm specifications; and GUILTY of the repeat violent offender specification and GUILTY of the notice of prior conviction specification. |
| 5 & 6 | NOT GUILTY of aggravated robbery. |
| 7 | GUILTy of having a weapon under disability. |

(Docket No. 4-2, p. 19 of 462).

**C.    THE SENTENCE.**

On March 12, 2007, Judge John D. Sutula imposed a sentence of 24 years, 3 years on the firearm specifications, all one and three-year firearm specifications in Counts 1, 2, 3 and 4 merge for sentencing, to be served prior to and consecutive to ten years on each of the base charges of Counts 1 and 2, to run concurrent with each other; 6 years on each of the base charges on Counts 3 and 4, to run concurrent to each other; and 5 years on Count 7, all counts to run consecutive to

each other. Post control release is a part of this sentence for 5 years (Docket No. 4-2, pp. 20, 23 of 462; Docket No. 9, pp. 26-29 of 31).

**D.     DIRECT APPEAL.**

Petitioner filed a notice of appeal from the underlying sentence on March 23, 2007, in the Court of Appeals for the Eighth Appellate District (court of appeals) (Docket No. 4-2, pp. 22-23 of 462). There were five assignments of error:

   1.   Petitioner was denied his constitutional right to a fair trial under the Sixth and Fourteenth Amendments because of prosecutorial misconduct at trial and during the closing argument.
   2.   Petitioner's right under the Sixth and Fourteenth Amendments to confront the witnesses against him was violated when numerous instances of testimonial hearsay were introduced against him at trial.
   3.   Petitioner was denied his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments when the court erred by admitting a great amount of enormously prejudicial testimony against him at trial.
   4.   Petitioner was denied his right under the Sixth and Fourteenth Amendments to the effective assistance of counsel when defense counsel failed to protect his rights during trial.
   5.   The jury's decision finding Petitioner guilty of the charges was against the manifest weight of the evidence.

(Docket No. 4-2, pp. 26-27 of 462).

On March 31, 2008, the Court of Appeals for the Sixth Appellate District journalized a journal entry and opinion in which Petitioner's conviction was affirmed and all of the assignments of error were overruled (Docket No. 4-2, pp. 109-131 of 462).

**E.     APPEAL TO THE SUPREME COURT OF OHIO.**

On May 15, 2008, Petitioner filed a notice of appeal from the court of appeal's judgment entered on March 31, 2008, and a memorandum in support of jurisdiction in the Supreme Court of Ohio. Three propositions of law involving violations of the Fifth, Sixth and Fourteenth Amendments were presented:

6

1. Petitioner was denied his constitutional right to a fair trial free of prosecutorial misconduct when the state's witnesses vouched for and provided facts not in evidence, impeached witnesses with others' alleged hearsay statements and introduced inadmissible hearsay and unfairly prejudicial information in order to gain a conviction.
2. Petitioner was denied his right to confront the witnesses against him when inadmissible hearsay in the form of rumors that he intended to murder the victim was introduced against him at trial.
3. Petitioner's right to due process and a fair trial was violated when significant amounts of prejudicial testimony regarding his criminal history and other bad acts were introduced against him at trial.
4. Petitioner was denied the right to the effective assistance of counsel when trial counsel did not object to egregious prosecutorial misconduct, inadmissible hearsay or unfairly prejudicial testimony at trial.

(Docket No. 4-2, pp. 134-135 of 462).

On September 10, 2008, Chief Justice Thomas J. Moyer denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question (Docket No. 4-2, p. 175 of 462; Www.sconet.state.oh.us./Clerk/ecms/search).

F.  POST CONVICTION RELIEF–APPLICATION TO REOPEN DIRECT APPEAL.

On June 11, 2008, Petitioner filed an application to reopen the direct appeal pursuant to APP. R. 26(B) in the court of appeals (Docket No. 4-2, pp. 176-186 of 462). Petitioner requested a hearing and relief based on his claim of ineffective assistance of counsel. On June 22, 2009, the court of appeals denied the application (Docket No. 4-2, pp. 201-214 of 462).

Petitioner filed a notice of appeal in the Supreme Court of Ohio on July 31, 2009 from the appeal of the June 22, 2009 denial of the application (Docket No. 4-2, pp. 215-216 of 462). Petitioner presented one proposition of law:

> Petitioner was denied the effective assistance of counsel when appellate counsel did not assign as an error the trial court's sentencing him to consecutive sentences

for attempted murder and felonious assault in violation of *State v. Rance*[1], and Article I, Section 10 & 16 of the Ohio Constitution and the Fifth and Fourteenth Amendment to the United States Constitution.

(Docket No. 4-2, p. 232 of 462).

Justice Moyer dismissed the appeal as not involving any substantial constitutional question on October 14, 2009 (Docket No. 4-2, p. 254 of 462).

On December 16, 2009, Petitioner's request for reconsideration was granted to the extent that the discretionary appeal was accepted and the case was held for decision in Supreme Court Case No. 2008-2037, *State v. Williams*, and the briefing schedule was stayed (Docket No. 4-2, p. 261 of 462).

On April 7, 2010, Chief Justice Moyer dismissed the case, *sua sponte*, as having been improvidently accepted (Docket No. 4-2, 262 of 462).

G.    **POST-CONVICTION RELIEF–MOTION FOR DELAYED NEW TRIAL AND NEW TRIAL.**

On December 9, 2008, Petitioner, *pro se*, filed a request for a new trial in the court of common pleas. He cited to irregularities in the trial, the misconduct of the jury, prosecutor and witnesses for the state and the discovery of new evidence as a basis for his request (Docket No. 4-2, pp. 264-265 of 462). Judge Sutula denied the motion on January 8, 2009 (Docket No. 4-2, p. 288 of 462).

Petitioner filed a notice of appeal and motion for leave to file an appeal out of rule on March 20, 2009 in the court of appeals (Docket No. 4-2, pp. 289, 293 of 462). On April 23, 2009, the court of appeals denied the motion for leave to file notice of appeal out of rule and

---

[1] The Supreme Court of Ohio overruled *State v. Rance*, 85 Ohio St. 3d 632, 710 N. E. 2d 699 (1999) in *State v. Johnson,* 129 Ohio St. 3d 153, 942 N. E. 2d 1061 (2010), holding that the conduct of the accused must be considered when determining whether two offenses are allied offenses of the similar import subject to merger statute.

8

dismissed the appeal *sua sponte* (Docket No. 4-2, pp. 297, 298 of 462).

Petitioner did not institute an appeal in the Supreme Court of Ohio.

### H. POST CONVICTION RELIEF–MOTION TO CORRECT SENTENCE.

On November 12, 2009, Petitioner, *pro se*, filed a motion in the common pleas court seeking an order correcting his sentence to the extent that it was consistent with Ohio's Allied Offense of Similar Import Statute[2] (Docket No 4-2, pp. 299-301 of 462). On November 30, 2009, Judge Sutula denied the motion (Docket No. 4-2, p. 302 of 462).

Petitioner did not appeal the denial of the motion to the court of appeals.

### I. POST-CONVICTION RELIEF–MOTION TO VACATE SENTENCE & WRIT OF MANDAMUS

In this motion filed on May 12, 2010, Petitioner, *pro se*, requested an immediate discharge from incarceration because his sentence was void (Docket No. 4-2, pp. 303-304 of 462). On June 29, 2010, Judge Sutula denied the motion to vacate a void sentence and to discharge pursuant to CRIM. R. 32 (A) (Docket No. 4-2, p. 329 of 462).

Petitioner, *pro se*, requested findings of fact and conclusions of law on August 25, 2010 (Docket No. 4-2, pp. 330-332 of 462). On December 30, 2010, Petitioner, *pro se*, filed a writ (of mandamus) in the court of appeals seeking an order directing Judge Sutula to provide findings of fact and conclusions of law forthwith (Docket No. 4-2, pp. 333-338 of 462). On January 14,

---

[2]

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

OHIO REV. CODE § 2941.25(A), (B) (Thomson Reuters 2012).

2011, the court of appeals denied the writ (Docket No. 4-2, pp. 344-348 of 462).

**J.      POST CONVICTION RELIEF–WRIT OF MANDAMUS.**

On or about April 22, 2011, Petitioner, *pro se*, filed a complaint for writ of mandamus with supporting memorandum of law in the court of appeals. Petitioner requested his immediate release for the reason that his sentence was void (Docket No. 4-2, pp. 349-352; 368-371 of 462). On September 14, 2011, the court of appeals denied the motion and dismissed the complaint (Docket No. 4-2, pp. 384, 385, 386-391 of 462).

Petitioner, *pro se*, filed a notice of appeal on October 3, 2011 and a merit brief on October 31, 2011, in the Supreme Court of Ohio (Docket No. 4-2, pp. 392-393; 401-410 of 462). On February 16, 2012, Chief Justice Maureen O'Connor affirmed the judgment of the court of appeals and the court of appeals was ordered to carry the judgment into execution (Docket No. 4-2, p. 420 of 462).

**K.      PETITION FOR WRIT OF HABEAS CORPUS PROCEEDING.**

On March 30, 2012, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. His request for habeas relief is based on the following grounds for relief:

1. Petitioner's sentence is contrary to law and therefore, void.
   **Relevant Supporting Facts**:
   Petitioner's sentence does not comport with OHIO REV. CODE § 2941.25 as multiple sentences were imposed for allied offenses of similar import. The sentence violates Article 1, Sections 10 and 16 of the Ohio Constitution, the Fifth and Fourteenth Amendments to the United States Constitution.

2. Petitioner's trial and appellate counsel were ineffective for failing to raise the allied offense of similar import argument on appeal.
   **Relevant Supporting Facts:**
   Petitioner's trial counsel failed to object to the imposition of multiple sentences for allied offenses at sentencing. Petitioner's appellate counsel failed to assign this as error in the appeal.

(Docket No. 1).

In the Return, Respondent countered with:

1. Petitioner's Petition for Writ of Habeas Corpus is time barred, filed ten months after the statute of limitations expired.

2. In the alternative, Petitioner waived his first and second claims for relief by failing to raise them at the first opportunity on direct review.

(Docket No. 4).

The Magistrate notes that in his Traverse, Petitioner does not concede that his Petition was untimely filed. Instead, Petitioner contends that since his sentence is void, the Petition is prematurely filed because the statute of limitations could not possibly commence absent a final order voiding his sentence or entering a statutorily mandated sentence (Docket No. 12).

Respondent points out in the Reply that failure to merge allied offenses does not render a sentence void but voidable. However, principles of res judicata apply to a voidable sentence and may operate to prevent a collateral attack based on a claim that could have been raised on direct appeal from the voidable sentence. In the alternative, Respondent reiterated that Petitioner's claims were procedurally defaulted and meritless (Docket No. 13).

### IV. JURISDICTIONAL PREREQUISITE TO HABEAS REVIEW.

A habeas application that is made by a person in custody pursuant to the judgment of a state court may be entertained "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Sanborn v. Parker,* 629 F.3d 554, 564 (6th Cir. 2010) *cert. denied*, 132 S.Ct. 498 (2011) (*citing* 28 U.S.C. § 2254(a)). The writ is operative against the custodian who is subject to the personal jurisdiction of the court. *Id*. For prisoners, the warden of the facility in which they are held is the proper custodian. *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2004) (as a general rule, a petitioner should name as a respondent to his

habeas corpus petition the individual having day-to-day control over the facility in which petitioner is being detained).

In the instant case, Petitioner, confined in Mansfield Correctional Institution, is in custody pursuant to state law and Respondent admits that in his capacity as warden, he is Petitioner's custodian. Petitioner challenges the validity and duration of his confinement as a violation of the Sixth and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction over the parties and the power to grant a writ of habeas corpus to Petitioner.

## V. HABEAS CORPUS STANDARD OF REVIEW.

The standard for reviewing state-court determinations on habeas cases is governed by the AEDPA. *Montes v. Trombley*, 599 F.3d 490, 494 (6th Cir. 2010) (*citing Ivory v. Jackson*, 509 F. 3d 284, 291 (6th Cir. 2007) *cert. denied*, 128 S.Ct. 1897 (2008)). AEDPA provides:

> a federal court may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

*Id.* (*citing Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir.2002) (citation omitted) *cert. denied*, 123 S.Ct. 490 (2002) (*quoting* 28 U.S.C. § 2254(d)).

A state-court decision is considered "contrary to . . . clearly established federal law" if the two are "diametrically different, opposite in character or nature, or mutually opposed." *Id.* (*citing Williams v. Taylor*, 120 S.Ct. 1495, 1519 (2000) (internal quotation marks omitted) (*quoting* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 495 (1976)). Alternatively, to be deemed an "unreasonable application of . . . clearly established Federal law," a state-court decision on the merits must be "objectively unreasonable," not simply incorrect. *Id*. (*citing*

*Williams*, 120 S.Ct. at 1521-1523). A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *Williams,* 120 S.Ct. at 1522. Rather, that application must also be unreasonable. *Id.*

But there are exceptions to the requirement of AEDPA deference. *Id.* For one, if a claim is fairly presented to the state courts, but those courts fail to adjudicate the claim on the merits, then the pre-AEDPA standards of review apply. *Id.* (*citing Cone v. Bell*, 129 S.Ct. 1769, 1784 (2009)). Under such review, questions of law, including mixed questions of law and fact, are reviewed *de novo*, and questions of fact are reviewed under the clear-error standard. *Id.* (*citing Brown v. Smith*, 551 F.3d 424, 430 (6th Cir.2008)). The federal habeas court will make its own independent determination of his or her federal claim without being bound by the determination on the merits of the claim reached in state proceedings. *Harries v. Bell*, 417 F.3d 631, 634-635 (2005) (*citing Buell v. Mitchell*, 274 F.3d 337, 344 (6th Cir.2001) (*quoting Wainwright v. Sykes*, 97 S.Ct. 2497, 2506 (1977)).

### VI. STATUTE OF LIMITATIONS AND TOLLING STANDARDS.

Under AEDPA, a state prisoner seeking habeas corpus relief pursuant to Section 2254 must comply with the statute of limitations period set forth in 28 U.S.C. § 2244, which provides in pertinent part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation shall run from the latest of-
>
> > (A) the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is

13

>> (C) removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactive applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) (Thomson Reuters 2012).

The Supreme Court held that the statute of limitations for habeas petitions is "subject to equitable tolling in appropriate cases." *Robertson v. Simpson* 624 F.3d 781, 783 (6th Cir. 2010) (*citing Holland v. Florida*, --- U.S. ----, 130 S.Ct. 2549, 2560 (2010)). This doctrine of equitable tolling allows courts to toll a statute of limitations when "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* (*citing Graham-Humphreys v. Memphis Brooks Museum of Art, Incorporated*, 209 F.3d 552, 560-561 (6th Cir.2000)).

Generally, the party seeking equitable tolling bears the burden of proving he or she is entitled to it. *Id.* (*See Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir.2002)). A habeas petitioner is entitled to equitable tolling only if he or she can make a two-part showing that he or she has pursued his or her rights diligently; and that some extraordinary circumstance prevented timely filing. *Jones v. United States*, 689 F. 3d 621, 627 (6th Cir. 2012) (*citing Hall v. Warden, Lebanon Correctional Institution*, 662 F. 3d 745, 749 (6th Cir. 2011)).

### VII. THE STATUTE OF LIMITATIONS IN THIS CASE.

The principal question in determining whether Petitioner is entitled to equitable tolling is

whether he has pursued his rights diligently; and whether some extraordinary circumstance prevented him from filing a habeas petition in a timely manner. Acknowledging that a lack of legal assistance and ignorance of the law do not generally amount to grounds for equitable tolling, there are other factors that persuade the undersigned Magistrate that Petitioner is entitled to equitable tolling. A review of the pleadings and an analysis of the factors in *Jones* establishes that Petitioner did not sleep on his rights and was diligent about pursuing his claims. He was not ignorant of the law; Petitioner had some misapprehension about its application[3]. Notwithstanding Petitioner's miscalculation of the deadline for filing, he did not passively await the decisions of the underlying court. Petitioner took extraordinary precautions to delay the expiration of the statute of limitations. The Magistrate is persuaded that Petitioner was sufficiently diligent and is entitled to equitable relief in determining whether his Petition was timely filed.

The Ohio Supreme Court denied Petitioner leave to appeal on September 10, 2008; consequently, the last day that Petitioner could have filed a petition for writ of *certiorari* in the United States Supreme Court was December 10, 2008. The statute began to run on December 11, 2008. Absent equitable tolling, the statute would have expired on December 11, 2009.

However, the running of the statute was suspended on December 10, 2008 by the pending motion to reopen that had been filed on June 11, 2008. The decision denying the motion to reopen was not rendered until October 14, 2009, followed by a motion to correct sentence filed

---

[3] Petitioner posits that his sentence is void because it exceed the statutory maximum limits. However, Petitioner's sentence is valid and enforceable, having not been set aside by a court of competent jurisdiction. Additionally, there were sufficient operative facts that demonstrated whether Petitioner's sentence exceeded the relevant statutory maximum limits inside the direct appeal record. This issue was not presented in the appeal as of right. Undoubtedly, the propriety and validity of his sentence is *res judicata.*

on November 12, 2009. The statute was tolled through April 7, 2010, when the court of appeals denied the motion. The statute ran 34 days from April 8, 2010 through May 12, 2010. The statute was tolled from May 13, 2010 through June 29, 2010, the date the journal entry was filed denying Petitioner's motion to vacate. The statute of limitations expired 331 days from June 29, 2010 or on May 26, 2011. Even with equitable tolling, Petitioner did not file his Petition until March 30, 2012, more than ten months after the statute of limitations expired.

Respondent argues that Petitioner's motions for findings of fact and complaints for writ of mandamus do not toll the statute of limitations. The Magistrate agrees with Respondent's conclusions, finding that the tolling statute contemplated that a request for post-conviction or other collateral relief could delay the running of the statute of limitations. A request for post-conviction or collateral relief, at a minimum, sets forth grounds for relief and attacks collaterally the relevant conviction or sentence. Petitioner's motion for findings of fact and the complaints for writ of mandamus did not attack the conviction or sentence or assert any grounds of alleged error. The Magistrate concludes that these pleadings neither affect the running nor the tolling of the statute of limitations in this case.

**VIII. THE MOTION TO ORDER STATE TO PROVIDE COMPLETE TRANSCRIPT OF PROCEEDINGS.**

Petitioner requests that the Court enter an order requiring Respondent to provide him with a copy of the complete, unabridged transcript of proceedings in this case, including all pre-trial proceedings, all trial proceedings, all sentencing proceedings and all post-trial proceedings. Petitioner suggests that Respondent bear all expenses for transcribing these records.

RULE 5 of the RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURT does not give Petitioner complete freedom to obtain a transcript at respondent's expense.

In fact, RULE 5(C) states that the respondent is not required to file an answer to a habeas petition unless the judge so orders. *Nash v. Eberlin*, 437 F. 3d 519, 523 (6th Cir. 2006). So when the respondent does answer, he or she must attach to the answer parts of the transcript that the respondent considers relevant. *Id.* In addition, "[t]he judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished." *Id.*

As a practical matter, compliance with the procedural requirements that precede federal habeas review, was made with reference to the chronological listing of the documents. The transcribed record was neither relevant nor material in making these determinations. Once a determination was made that this case is time barred, the need to obtain a transcribed record has been eliminated.

### IX. CONCLUSION

For these reasons, the Magistrate recommends that the Court deny the Petitioner's Petition for Writ of Habeas Corpus (Docket No. 1), deny the Motion for Order Instructing Respondent to Supply a Transcript (Docket No. 4), dismiss the case and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: January 22, 2013

### X. NOTICE.

Please take notice that as of this date the Magistrate Judge's report and recommendation

attached hereto has been filed. Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen days after being served with a copy thereof. Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.